# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 19-00030 |
| Plaintiff, | |
| vs. | **ORDER** |
| JERRY THOMAS GUERRERO II, | |
| Defendant. | |

Before the court is Defendant's motion to suppress. *See* ECF No. 98. Having considered the parties' briefing and the relevant record, the court hereby finds oral argument unnecessary and DENIES the motion for the reasons explained herein.

## I. BACKGROUND

The Government alleges that Defendant engaged in sexual relations with the victim, a 14-year-old female, approximately 10 times over the course of a 6-month period, beginning in the latter part of October 2017. ECF No. 99 at 3. According to the Government, Defendant first met the victim through a social media application. *Id.* at 2. He later sent the victim explicit videos of their interactions using another social media application. *Id.* at 2-3. The resulting federal crimes, charged by way of the Superseding Indictment, are one count of Production of Child Pornography and one count of Enticement of a Minor. *See* ECF No. 89 at 1–2.

The Guam Police Department initiated the investigation. ECF No. 99 at 2. It began after

1

the alleged victim's mother contacted local law enforcement upon finding sexually explicit images on the victim's cell phone. ECF No. 99 at 2. Over the course of the resulting investigation, Superior Court of Guam judges authorized four search warrants, and U.S. District Court judges authorized another eight after the case was transferred to federal prosecutors. *See* ECF No. 98-1 at 2–6, 99 at 3–6; *see also* ECF No. 98-1 at 14–57 (local warrants, related affidavits, and returns). Collectively, the warrants authorized searches of Defendant's person, his residence, his vehicle, his electronic devices, and the victim's cell phone. *See* ECF No. 99 at 3–6 (summarizing warrants). The Honorable Michael Bordallo, Alberto Lamorena III, and Maria Cenzon signed the initial warrants. ECF No. 98-1 at 21, 37, 51, 98. The case was then picked up by federal prosecutors. The Honorable Michael Bordallo, Alberto Lamorena III, and Maria Cenzon later disqualified themselves from presiding over the Superior Court matter, as did all of Guam's Superior Court Judges. *See id.* at 4 n.1, 58–61.

Defendant moves to suppress evidence derived from all of the warrants. *See generally* ECF No. 98-1. He argues that (a) the Guam Superior Court warrants were not signed by neutral and detached magistrates, based on their later disqualifications, and (b) the evidence from the federal warrants represent fruits of a poisonous tree. *Id.*

## II. DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. It was "designed to prevent law enforcement officers from engaging in general exploratory searches." *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) (internal quotation omitted). However, it only protects a criminal defendant from a search if the defendant "can show that he had a legitimate expectation of privacy in the place searched or the item seized." *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

The Government first argues Defendant lacks standing to challenge the evidence gathered from the victim's cell phone, as he has no legitimate expectation of privacy regarding the contents of the device. ECF No. 99 at 6–11. The court agrees. "A person who is aggrieved by an

2

Case 1:19-cr-00030   Document 116   Filed 03/18/22   Page 2 of 4

illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Said another way, one has no reasonable expectation of privacy over the contents of another's cell phone. *See Katz v. U.S.*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (the expectation of privacy must be "one that society is prepared to recognize as reasonable.") (internal quotation omitted). Defendant's argument to the contrary, based on Guam's revenge pornography statute, *see* ECF No. 101 at 2–3, is not well taken. "[S]tate restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).

The Government next contends that no evidence was extracted from Defendant's electronic devices. Defendant does not challenge this contention on reply. *See* ECF No. 99 at 8; *see generally* ECF No. 101. Therefore, the only search warrant at issue is Guam Superior Court warrant 94-18, signed by the Judge Bordallo on June 28, 2018. ECF No. 98-1 at 31. It authorized the search for evidence on Defendant's person, in his residence, and in his vehicle.

To be valid, this warrant had to be authorized by a neutral and detached magistrate. *Shadwick v. City of Tampa*, 407 U.S. 345, 350–51 (1972). However, there is no bright-line rule for the court to apply to determine what constitutes a neutral and detached magistrate. At a minimum, the magistrate cannot be personally involved in the search or represent law enforcement's interests. *See, e.g.*, *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979) (warrant authorized by town justice who acted as a member of the search party "did not manifest [requisite] neutrality and detachment demanded of a judicial officer"); *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971) (warrant authorized by State Attorney General who would later serve as chief prosecutor at trial was invalid). It is less clear, though, what relationship between the object of the search and the magistrate would be sufficient to raise constitutional issues.

The cases cited by Defendant on this topic are not persuasive. *See* ECF Nos. 98-1 at 7–11, 101 at 3–6. *State v. Edman* is distinguishable in that the magistrate intervened on behalf of

3

the homeowner and provided him legal advice not long before authorizing the search of his home. 915 A.2d 857, 862 (Conn. 2007). This represents a substantial personal connection between the two. *Com. v. Brandenburg*, 114 S.W.3d 830 (Ky. 2003), is also distinguishable. In that case the magistrate had a pecuniary interest in the object of the search through the magistrate's husband's employment. *Id.* at 831–32.

Here, Judge Bordallo filed a memorandum of disqualification pursuant to 7 G.C.A. § 6106. ECF No. 38-1 at 37, 58–59. In the memorandum, he indicated that he "cannot be impartial in this matter" because of his relationship with Defendant's father, a "long tenured employee of the Court with whom the Court is acquainted." *Id.* at 58–59. He went on to reference socializing with Defendant's father on numerous occasions and that Defendant's father has provided "great assistance to the Court." *Id.* at 58. However, Judge Bordallo did not discuss a relationship between himself and Defendant in the memorandum, which suggests that there was none. *See generally* ECF No. 58–59. The partiality described above simply is not so "extreme" as to "rise to a constitutional level." *See United States v. Heffington*, 952 F.2d 275, 279 (9th Cir. 1991).

Accordingly, the court FINDS that Judge Bordallo acted as a neutral and detached magistrate when he signed the warrant authorizing the search of Defendant's person, vehicle, and home.[1]

### III. CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to suppress. ECF No. 98. As such, the April 11, 2022 hearing is hereby vacated.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Mar 18, 2022**

---

[1] The court need not hold an evidentiary hearing to make this finding because Defendant's moving papers do not "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).